**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-3057 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ALLEGHANY CORPORATION, | : **SECURITIES EXCHANGE ACT OF** |
| JEFFERSON W. KIRBY, JOSEPH P. | : **1934** |
| BRANDON, KAREN BRENNER, CHRIS H. | : |
| CHEESMAN, IAN H. CHIPPENDALE, | : **JURY TRIAL DEMANDED** |
| JOHN G. FOOS, PHILLIP M. MARTINEAU, | : |
| LAUREN M. TYLER, and RAYMOND L.M. | : |
| WONG, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Alleghany Corporation ("Alleghany or the "Company") and the members Alleghany's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Alleghany by affiliates Berkshire Hathaway Inc. ("Berkshire Hathaway").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 11, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the O&M Acquisition Corp. ("Merger Sub"), a wholly-owned subsidiary of Berkshire Hathaway, will merge with and into Alleghany with Alleghany surviving as a wholly owned subsidiary of Berkshire Hathaway (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 20, 2022 (the "Merger Agreement"), each Alleghany stockholder will receive $848.02 in cash (the "Merger Consideration") for each Alleghany share owned.

1. As discussed below, Defendants have asked Alleghany's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Alleghany's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants reside in this District.

**PARTIES**

7. Plaintiff is, and has been at all relevant times, the owner of Alleghany stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Jefferson W. Kirby has served as a member of the Board since 2006 and is the Chairman of the Company.

9. Individual Defendant Joseph P. Brandon has served as a member of the Board since December 2021 and is the Company's President and Chief Executive Officer.

10. Individual Defendant Karen Brenner has served as a member of the Board since 2009.

11. Individual Defendant Chris H. Cheesman has served as a member of the Board since September 2021.

12. Individual Defendant Ian H. Chippendale has served as a member of the Board since 2012.

13. Individual Defendant John G. Foos has served as a member of the Board since 2012.

14. Individual Defendant Phillip M. Martineau has served as a member of the Board since 2009.

15. Individual Defendant Lauren M. Tyler has served as a member of the Board since 2019.

16. Individual Defendant Raymond L.M. Wong has served as a member of the Board since 2006.

17. Defendant Alleghany is a Delaware corporation and maintains its principal offices at 1411 Broadway, 34th Floor, New York, NY 10018. The Company's stock trades on the New York Stock Exchange under the symbol "Y."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

20. Allegheny provides property and casualty reinsurance and insurance products in the United States and internationally. The Company operates in three segments: Reinsurance, Insurance, and Alleghany Capital. The Reinsurance segment offers fire, allied lines, auto physical damage, and homeowners multiple peril reinsurance products; and casualty and other reinsurance products, such as medical malpractice, ocean marine and aviation, accident and health, mortgage, surety, and credit reinsurance products, as well as directors' and officers', errors and omissions, general, and auto liability reinsurance. This segment distributes its products and services through

brokers, as well as directly to insurance and reinsurance companies. The Insurance segment underwrites specialty insurance coverages in the property, umbrella/excess, general, directors' and officers', and professional liability lines; surety products comprising commercial and contract surety bonds; and workers' compensation insurance products. This segment distributes its products through independent wholesale insurance brokers, and retail and general insurance agents. The Alleghany Capital segment provides precision automated machine tool solutions; manufactures custom trailers and truck bodies for the moving and storage industry, and other markets; design, engineering, procurement, construction management, and validation services for pharmaceutical and biotechnology industries; products and services for the funeral and cemetery industries, and precast concrete markets; and hotel management and development services, as well as operates as a toy and musical instrument company, and structural steel fabricator and erector. The Company also owns and manages improved and unimproved commercial land, and residential lots. As of December 31, 2021, it owned approximately 77 acres of property. The Company was founded in 1929 and is based in New York, New York.

21. On March 21, 2022, the Company and Berkshire Hathaway jointly announced the Proposed Transaction:

> OMAHA, Neb. & NEW YORK--(BUSINESS WIRE)-- Berkshire Hathaway (NYSE:BRK.A; BRK.B) and Alleghany Corporation (NYSE:Y) today jointly announced they have entered into a definitive agreement under which Berkshire Hathaway will acquire all outstanding Alleghany shares for $848.02 per share in cash. The transaction, which was unanimously approved by both Boards of Directors, represents a total equity value of approximately $11.6 billion. The acquisition price represents a multiple of 1.26 times Alleghany's book value at December 31, 2021, a 29% premium to Alleghany's average stock price over the last 30 days and a 16% premium to Alleghany's 52-week high closing price.

"Berkshire will be the perfect permanent home for Alleghany, a company that I have closely observed for 60 years. Throughout 85 years the Kirby family has created a business that has many similarities to Berkshire Hathaway. I am particularly delighted that I will once again work together with my long-time friend, Joe Brandon," said Warren E. Buffett, Berkshire Hathaway's Chairman and Chief Executive Officer.

"My family and I have been significant shareholders of Alleghany for over 85 years and are proud that our ownership will culminate through this compelling transaction with Berkshire Hathaway. Not only does this deal provide substantial and certain value to stockholders, but it provides a rare opportunity to join forces with a like-minded and highly respected investor and business leader," said Jefferson W. Kirby, Chair of the Alleghany Board of Directors. "Berkshire Hathaway's support, resources, and expertise will provide added benefits and opportunities for Alleghany and its operating businesses for many years to come."

"This is a terrific transaction for Alleghany's owners, businesses, customers, and employees," said Joseph P. Brandon, Alleghany's President and Chief Executive Officer. "The value of this transaction reflects the quality of our franchises and is the product of the hard work, persistence, and determination of the Alleghany team over decades. As part of Berkshire Hathaway, which epitomizes our long-term management philosophy, each of Alleghany's businesses will be exceptionally well positioned to serve its clients and achieve its full potential."

The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by Alleghany stockholders and receipt of regulatory approvals. Alleghany will continue to operate as an independent subsidiary of Berkshire Hathaway after closing. Mr. Kirby, who controls 2.5% of Alleghany common shares, intends to vote his shares for the transaction.

Under the terms of the definitive merger agreement, Alleghany may actively solicit and consider alternative acquisition proposals during a 25-day "go-shop" period. Alleghany has the right to terminate the merger agreement to accept a superior proposal during the go-shop period, subject to the terms and conditions of the merger agreement. There can be no assurances that the "go-shop" process will result in a superior proposal, and Alleghany does not intend to communicate developments regarding the process unless and until Alleghany's

>Board of Directors makes a determination requiring further disclosure.
>
>Goldman Sachs & Co. LLC is serving as financial advisor and Willkie Farr & Gallagher LLP is serving as legal advisor to Alleghany. Munger, Tolles & Olson LLP is serving as legal advisor to Berkshire Hathaway.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Alleghany's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23. On April 11, 2022, Alleghany filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Alleghany management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its

fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Alleghany management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Diluted Book Value per share, Adjusted Earnings, and Adjusted Return on EQuity, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to Goldman Sachs' *Illustrative Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for Alleghany; (ii) the inputs and assumptions underlying the use of P/BV multiples ranging from 0.90x to 1.20x; (iii) the inputs and assumptions underlying the use of the range of discount rates of 9.2% to 10.4%; (iv) the Company's estimated cost of equity; and (v) the number of fully diluted shares of Company common stock outstanding as of March 18, 2022.

30. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the use of the discount rate of 9.8%.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31. With respect to Goldman Sachs' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis, including: (i) the equity value of each transaction and (ii) each target company's book value.

32. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

33. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Alleghany within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Alleghany, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Alleghany, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Alleghany, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 13, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*